UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENTON J. LOHMAN,<br><br>                            Petitioner,<br><br>    v.<br><br>T. FELKER, Warden,<br><br>                            Respondent. | Civil No.   07cv905 J (CAB)<br><br>**REPORT AND RECOMMENDATION REGARDING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br>**[Doc. No. 22.]** |

## I. INTRODUCTION

Petitioner Trenton J. Lohman, a state prisoner proceeding *pro se*, filed a First Amended Petition for Writ of Habeas Corpus ("FAP") pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in Case No. SCE248209.  Petitioner was convicted of the crime of battery with serious bodily injury, and possession of methamphetamine.  He contends his rights were violated as follows: (1) the evidence was insufficient to support the finding he inflicted great bodily injury within the meaning of California Penal Code § 1192.7(c)(8); and (2) the trial court erred when it instructed the jury with CALJIC Nos. 19.12 and 17.20 because the instructions, when given together, were confusing.[1]

///

---

[1] Petitioner does not list insufficiency of the evidence as a separate ground for relief in his petition, but instead includes it within Ground One along with his due process claim regarding the jury instructions.  However, given the language in the instant petition and the previous arguments raised on direct appeal, it appears Petitioner intended to raise insufficiency of the evidence as a separate ground for relief.

The Court has considered the Petitioner, Respondent's Answer, Petitioner's Traverse, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, this Court recommends the Petition be **DENIED**.

## II.  FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The facts as found by the state appellate court are as follows:

> On February 26, 2005, Mr. Horning (the victim) was talking on his cellular telephone when he saw Lohman approaching him. Lohman "[got] right up into [Horning's] face" and demanded that Horning surrender the high school class ring he was wearing. Horning refused, and Lohman stated he was a professional boxer and would beat Horning up. Horning tried to defuse the situation by walking away and getting into his truck, but Lohman followed him. Horning told him to leave, but Lohman refused, and instead reached into Horning's truck and punched him in the face at least four times, knocking Horning backward. Horning grabbed a wooden "tire knocker" and struck Lohman, but Lohman wrestled him from the truck, pulled his jacket over his head, and wrestled him to the ground, with Lohman on top. Lohman tried to take the tire knocker from Horning but was unsuccessful, and Horning continued to fend off Lohman with the tire knocker. Horning was able to free himself and the fight ended.
>
> Horning called 9-1-1 and reported the license plate of Lohman's car. Lohman was arrested shortly thereafter and police found methamphetamine in his wallet.
>
> The emergency room doctor noted a linear abrasion on Horning's forehead and significant bruising on his face; a CT scan showed Horning had suffered a fractured or broken nose. Two days later, Horning was treated by an ear, nose and throat specialist, who performed nasal fracture surgery to straighten Horning's nasal bones. Horning had been unable to breathe out of the left side of his nose due to a nasal obstruction caused by the fracture. Although Horning had suffered a deviated septum or nasal fracture six years earlier, his injury treated following the altercation with Lohman was recent.
>
> Lohman claimed he acted in self-defense and denied possessing methamphetamine.

(Lodgment No. 6 at 2-3.)

## III.  PROCEDURAL BACKGROUND

On May 25, 2005, a jury found Petitioner guilty of the following crimes: (1) battery with serious bodily injury, in violation of California Penal Code § 243(d); and (2) possession of methamphetamine, a controlled substance, in violation of Health and Safety Code § 11377(a). (Clerk's Transcript at 86-87.) The jury also found that Petitioner inflicted great bodily injury upon the victim, within the meaning of

Penal Code § 1192.7(c)(8). (CT at 86.) Petitioner was sentenced to a total term of 12 years. (CT at 90.) The sentence was composed of: (1) the middle term of three years for battery, doubled pursuant to the three strikes law; (2) a five-year consecutive term for a prior serious felony; and (3) a one-year consecutive term for a prior prison term. (*Id*.) The court also imposed a four-year concurrent term for possession of methamphetamine. (*Id*.)

On direct appeal, Petitioner argued the imposition of a sentence other than under the three strikes law was the proper sentence choice, the jury instructions were confusing, and there was insufficient evidence to establish he inflicted "great bodily injury" on the victim. (Lodgment No. 3.) The California Court of Appeal, Fourth Appellate District, Division One, denied the appeal and affirmed the judgment on May 5, 2006. (Lodgment No. 6.)

Petitioner submitted a petition for review in the California Supreme Court, which raised the same issues as before the Court of Appeal. (Lodgment No. 7.) The petition for review was summarily denied on July 12, 2006. (Lodgment No. 8.)

On May 17, 2007, Petitioner filed a federal petition for writ of habeas corpus. [Doc. No. 1.] On June 13, 2007, Petitioner filed a state petition for writ of habeas in the California Supreme Court for purposes of exhausting state court remedies as to the federal constitutional issues raised in his federal petition. (Lodgment No. 9.) On June 15, 2007, Petitioner filed a motion to hold his federal petition in abeyance while he exhausted state court remedies. [Doc. No. 6.] On September 6, 2007, this Court issued a Report and Recommendation recommending the petition be dismissed without prejudice and the motion for stay and abeyance be denied. [Doc. No. 17.] On September 24, 2007, in response to the Report and Recommendation, Petitioner moved to withdraw his petition without prejudice. [Doc. No. 19.] On December 12, 2007, the California Supreme Court denied his state petition for writ of habeas corpus. [Lodgment No. 10.] On January 10, 2008, the Honorable Napoleon A. Jones, Jr. granted Petitioner's motion and dismissed the petition without prejudice. [Doc. No. 20.]

On January 22, 2008, Petitioner filed a First Amended Petition. [Doc. No. 22.] Respondent Answered on June 27, 2008. [Doc. No. 27.] Petitioner submitted his Traverse on August 7, 2008. [Doc. No. 31.]

///

## IV.  DISCUSSION

Petitioner argues the evidence at trial was insufficient to support the finding he inflicted great bodily injury within the meaning of California Penal Code § 1192.7(c)(8), claiming that the injury to the victim was at most "moderate."  He also contends the jury instructions violated his right to due process because they were confusing.  Respondent argues the petition should be denied because the state court decision denying these claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

**A.    Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (emphasis added).

The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

### B.      Insufficiency of the Evidence

Petitioner claims the evidence at trial was insufficient to establish that the injury inflicted on the victim was a "bone fracture," or that the degree of injury was anything more than moderate. (FAP at 6.) The Fourteenth Amendment Due Process Clause protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing an insufficient-evidence claim in habeas proceedings, a federal court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard is applied with specific reference to the applicable state law defining the elements of the crime at issue. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

A federal court faced with a factual record "that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. "The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir.1996); *see also Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir.1997). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a

conviction." *United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks, brackets, and citation omitted).  This Court may only grant habeas relief if the state court's decision constituted an "unreasonable application of" the standard put forth in *Jackson*. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

The state appellate court denied Petitioner's claim as follows:

> Lohman's conviction for battery with serious bodily injury qualifies as a serious felony under section 1192.7, subdivision (c)(8) because the jury found true that Lohman personally inflicted great bodily injury in committing the battery. [Footnote omitted.] Section 1192.7, subdivision (c) defines non-enumerated crimes as serious felonies by reference "to conduct rather than a specific crime" [citation omitted], including "any felony in which the defendant personally inflicts great bodily injury on any person . . . ." (§1192.7, subd. (c)(8).) Under this conduct-based definition, the five-year sentence enhancement under section 667, subdivision (a)(1) is proper as long as the jury's true finding is supported by substantial evidence.
>
> The court gave the jury the standard instruction, CALJIC No. 17.20, that great bodily injury "means a significant or substantial physical injury [; m]inor, trivial or moderate injuries do not constitute great bodily injury."  Lohman does not challenge the accuracy of that instruction. [Footnote omitted.] Instead, Lohman argues there was no substantial evidence Horning's injury was significant or substantial.  Whether a particular injury constitutes great bodily injury, or is instead only a moderate injury within the meaning of CALJIC No. 17.20, is a factual determination reserved for the jury. [Citation and footnote omitted.] There is substantial evidence from which a rational trier of fact could conclude Horning's injury was a significant or substantial, rather than merely a minor or moderate, injury.  The emergency room physician testified Horning looked "pretty swollen" and that a C.T. scan confirmed his nose was fractured.  The ear, nose and throat specialist who performed nasal fracture surgery to straighten Horning's nasal bones testified Horning had a fracture with some septal deviation to the left, and the fracture prevented Horning from breathing through the left side of his nose.  The injury was sufficiently severe to preclude treatment through a closed reduction (an operation requiring no incision), but instead involved a septum that was "extremely deviated" and required invasive surgery lasting between 60 and 90 minutes.  There was substantial evidence from which the jury could conclude the injury was significant or substantial rather than merely minor or moderate and was therefore a great bodily injury within the meaning of section 1192.7, subdivision (c)(8).

(Lodgment No. 6 at 8-10.)

The state court decision was not unreasonable.  Under California law, every bone fracture is not automatically a serious or great bodily injury.  *People v. Nava*, 207 Cal. App. 3d 1490, 1497 (Cal. Ct. App. 1989).  "Bone fractures are . . . variable, ranging from compound fractures of major bones to hairline fractures of very small ones." *Id.* at 1496.  Whether a bone fracture in a particular case rises to the level of great bodily injury within the meaning of Penal Code § 1192.7 is a question of fact for the jury to decide. *See id.* at 1498.

Here, there was substantial evidence upon which a rational trier of fact could have found beyond a reasonable doubt that the injury to the victim constituted a great bodily injury, rather than a minor or

moderate injury.  *See Jackson*, 443 U.S. at 319.  In particular, Dr. Butcher, Mr. Horning's treating physician at the emergency room, testified Mr. Horning's face was "pretty swollen and banged up" when he arrived at the hospital, and "that he had some linear abrasions or marks on his forehead that looked as if he had been hit by someone wearing a ring, or some other object."  (Reporter's Transcript at 13, 16.)  Dr. Butcher order a C.T. scan of Mr. Horning's facial bones, which revealed a fractured nose that extended up to the bony portion of his nose.  (RT at 13, 17.)

      Additionally, the jury heard testimony from Dr. Miya, an ear, nose, and throat specialist who performed surgery on Mr. Horning to straighten out the nasal bones.  (RT at 31.)  Dr. Miya testified Mr. Horning had a extremely deviated septum that prevented him from breathing out of his left nostril.  (RT at 31.)  The open nasal septum fracture repair surgery lasted between 60 and 90 minutes.  (RT at 32.)  Based on these facts, a rational jury could have found the harm to be great bodily injury.  Accordingly, because the state court decision denying this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, this Court recommends Petitioner's claim of insufficient evidence be **DENIED**.

**C.   Jury Instructions**

      Petitioner argues his due process rights were violated when the trial court instructed the jury with CALJIC Nos. 9.12 and 17.20 because the instructions, when given together, were confusing.  "Instructional error will not support a petition for federal writ of habeas relief unless it is shown 'not merely that the instruction is undesirable, erroneous, or even "universally condemned,"'[citation omitted], but that 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' [citation omitted]."  *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  Furthermore, the allegedly erroneous jury instruction cannot be judged in isolation.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  Rather, it must be considered in the context of the entire trial record and the instructions as a whole.  *Id.*; *see also Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993) (finding that the right to present a complete defense does not entitle a defendant to a particular set of jury instructions).

///

CALJIC No. 9.20, the jury instruction for battery with serious bodily injury, states in pertinent part: "[t]he term 'serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." CALJIC No. 17.20, the jury instruction regarding the infliction of great bodily injury, states in pertinent part: "'[g]reat bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury." Petitioner contends these instructions, when given together, were confusing because CALJIC No. 9.12 lists a bone fracture as a "serious bodily injury," which could lead a jury to believe a bone fracture would automatically constitute a "great bodily injury." However, Petitioner does not demonstrate, nor is there any indication in the record, that such confusion existed.

The trial court's instructions to the jury made clear that battery with serious bodily injury was a separate concept from infliction of great bodily injury. (*See* RT at 221.) Specifically, the trial court stated: "[i]f you find the defendant guilty of battery with serious bodily injury, a felony, you must determine *whether* that defendant personally inflicted great bodily injury on Sean Horning in the commission of the battery with serious bodily injury." (RT at 221; emphasis added.) The jury was also provided with separate definitions for each of the allegations. (RT at 221-22.) Thus, the jury would have been aware that a finding of guilty as to battery with serious bodily injury did not automatically mean the defendant was also guilty of infliction of great bodily injury. Furthermore, as discussed above, there was substantial evidence to support a finding by the jury that the injury inflicted on the victim constituted a "great bodily injury," rather than a minor or moderate injury. Accordingly, because Petitioner fails to establish that the jury instructions "so infected the entire trial that the resulting conviction violates due process," *see Cupp*, 414 U.S. at 146, this Court recommends the due process claim regarding jury instructions be **DENIED**.

## V.  CONCLUSION

This Court submits this Report and Recommendation to United States District Judge Napoleon A. Jones, Jr. under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY**

**RECOMMENDED** that the Court issue an Order:  (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition in its entirety.

    **IT IS ORDERED** that no later than **September 15, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **10 days after being served with the objections**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

    **IT IS SO ORDERED**.

DATED:  August 11, 2008

                                            **CATHY ANN BENCIVENGO**
                                            United States Magistrate Judge